PETER Q. HOAGLAND, appellant,

*v.*

ANDREW J. SHAMPANORE, respondent.

A makes a chattel mortgage to B and afterwards another mortgage upon the same property to C, who has at the time notice of the preceding mortgage. C puts his mortgage on record before B. After both are recorded C sells his mortgage to D.—*Held,* that D takes the mortgage subject to the lien of the first mortgage held by B.

On July 5th, 1882, Shampanore sold to one Porter the property in a newspaper office for $3,382. Of this, $500 was paid in cash. The remainder, $2,882, was secured by a note, which note was accompanied by a chattel mortgage, each made the day of the sale, which mortgage was placed on file for record two days thereafter. After the making and delivery of this mortgage. Porter, on the same day, made another mortgage upon the same property to one Thomas, to secure the sum of $500. This mortgage was placed on file for record the next day. It thus appears that the mortgage to Thomas, although made second in order of time to that of Shampanore, was first in order of time as to record. It however conclusively appears that Thomas, at the time he took his mortgage, knew of the existence of the mortgage to Shampanore.

Afterwards Thomas assigned his mortgage to Hoagland, who had no actual knowledge of the existence of the Shampanore mortgage.

The consideration paid for the mortgage was as follows: Thomas owed Hoagland a note for $1,700. When Hoagland received this assignment he credited upon this note the amount of $500, took a new note for that amount and this assignment of this $500 mortgage.

Hoagland proceeded to sell the property under this assigned mortgage. The bill was filed by Shampanore, the first mortgagee, to enjoin the sale, and to have the priority of the liens of these respective mortgages determined.

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is as follows:

The complainant owned a newspaper called "The Bound Brook Chronicle." On July 5th, 1882, he sold it to E. B. Porter for $3,382, of which $500 was paid in cash and the balance secured by chattel mortgage on the materials of the concern, executed and delivered to Mr. Shampanore at the same time. This mortgage was not recorded until the second day thereafter. Afterwards, but on the same day of the execution of the above-named mortgage, and without the knowledge of Shampanore, Porter executed and delivered another mortgage on the same chattels to one Cornelius D. Thomas for $500, which was filed in the clerk's office, to be recorded the next day. The money secured by this last mortgage became due in thirty days. Thomas assigned this mortgage to Peter Q. Hoagland, the other defendant, who advertised all the chattels named in the two mortgages for sale.

This bill was filed to restrain that sale, and to determine the priority of the said mortgages.

Mr. Thomas, who accepted of this $500 mortgage, assisted in negotiating the sale to Mr. Porter. It may very properly be said that he was very active in the interest of Mr. Porter, and knew all about the terms of the sale and mode of payment. He was fully apprised of the mortgage given to complainant to secure a large portion of the purchase-money before he accepted of his mortgage. As between Thomas and Shampanore, this fact placed Thomas's mortgage subsequent. But the defendant Hoagland insists that Thomas assured him that his mortgage was the first on record, and that since that was the fact he is entitled to priority, although he did not examine the record himself. The complainant insists that Hoagland is chargeable with the same notice that Thomas had, and, if this fails, that Thomas cannot prevail, because he did not give any valuable consideration when he took the mortgage.

I think the principles of law contended for by the complainant are applicable to this case. Hoagland did not examine

the record. As I understand his testimony, he relied upon
Thomas for information. He therefore made Thomas his agent.
He trusted Thomas for the truth. Let it be observed that the
point of inquiry with Hoagland was the priority of this mort-
gage. It is this fact that necessarily charges Hoagland with all
the knowledge Thomas had, although such knowledge was ac-
quired at a time when he was not acting for Hoagland, but so
recently as to bring him within the rule. Besides, Hoagland
says he loaned $1,700 to Thomas to enable him to bring about
the purchase of the said newspaper. This mortgage he took to
secure a part of that $1,700.

But again : Mr. Thomas could not have insisted on this claim
of priority. See *Sayre* v. *Hewes, 5 Stew. Eq. 652, 656.* This
being so, his assignee can claim no higher equity. The rule is
well illustrated in our own reports. *Woodruff* v. *Morristown
Inst., 7 Stew. Eq. 174, 178 ; Vredenburgh* v. *Burnett, 4 Stew. Eq.
229, and cases therein mentioned.* The case of *McFarland* v. *Gil-
christ, 10 C. E. Gr. 487,* is not far from being quite analogous to
this. See, also, *Bolles* v. *Wade, 3 Gr. Ch. 458 ; Woodruff's Exr.*
v. *Black, Sax. 338 ; Conover* v. *Van Mater, 3 C. E. Gr. 481 ;
Kamen* v. *Huelbig, 8 C. E. Gr. 78.*

When Hoagland accepted the assignment, what did he give
for it? He held a note against Thomas, delivered to him by
Thomas some time before, for $1,700, money loaned for the pur-
pose of effecting the sale above mentioned. When Hoagland ac-
cepted the assignment he took another note for $500, and gave
Thomas credit on the $1,700 note for the $500. I can find no
case that goes so far as to place him in the highly-favored atti-
tude of a *bona fide* purchaser for value. I understand the law
to be against him. *Kamen* v. *Huelbig, 8 C. E. Gr. 78 ; De
Witt* v. *Van Sickle, 2 Stew. Eq. 209, and cases cited ; Westbrook*
v. *Gleason, 79 N. Y. 23 ; Van Doren* v. *Todd, 2 Gr. Ch. 397 ;
Baldwin* v. *Johnson, Sax. 441.* See the notes by the American
editor to *Basset* v. *Nosworthy, 2 Lead. Cas. in Eq. 33, 50, 57.*

But counsel for Hoagland has insisted that the statute respect-
ing chattel mortgages has entirely supplanted the foregoing rules

Hoagland *v.* Shampanore.

of equity, and that now it is only necessary to be able to get a chattel mortgage on record first. This does not seem to me to be the reasonable interpretation of the act. See *Williamson* v. *N. J. Southern R. R., 11 C. E. Gr. 398.*

In my opinion, the complainant's mortgage is the first lien. The injunction heretofore issued should be made perpetual. A receiver should be appointed, and I will advise a decree accordingly.

*Mr. John Schomp,* for appellant.

*Mr. Jas. J. Bergen,* for respondents.

The opinion of the court was delivered by

REED, J.

It is perceived that this case presents no contested questions of fact. It conclusively appears that of the respective mortgages now contending for priority, the Shampanore mortgage was executed first but recorded last; that the Thomas mortgage, although recorded first, was taken by the mortgagee with full knowledge of the existence of the preceding mortgage. As to Thomas, therefore, having actual notice of the Shampanore mortgage, he took his lien subject to the lien of that mortgage, and he gained nothing by his prior registry.

The questions involved in this litigation arise out of the assignment of the Thomas mortgage to Hoagland, who took it without actual notice of the existence of any prior mortgage upon the property covered by the one he purchased. The inquiry is, whether he, by reason of his purchase, secured a position, in regard to the prior mortgage, which was superior to the position of Thomas, his assignor. It is true that the appellant claims that, by the terms of the recording act, as to both Thomas and Hoagland, the mortgage of Shampanore was void.

This contention is put upon the ground that this act declares that unless a mortgage (where there is no delivery of the mortgaged goods) shall be filed, it shall be absolutely void as against

the creditors of the mortgagee, and that both Thomas and Hoagland occupied the position of creditors.

But it is apparent that while creditors, their lien, whatever it was, was as purchasers only. *Judge* v. *Vogel, 38 Mich. 569.*

This, then, as I observed, leaves as the only question the effect of the purchase of the mortgage by Hoagland without notice. Outside of the operation of the registry act it is clear that the assignee could get no greater interest by his purchase than was possessed by his assignor. Priority of time would have given Shampanore priority of right. The second mortgagee could have conveyed no better title than he possessed, which was a lien subject to that of the preceding mortgage.

The contention is, that by force of the registry acts this rule was modified—that this first mortgage being unregistered until after the registration of the second mortgage, a purchaser of the second mortgage had the right to rely upon the condition of the record, and so his mortgage gained the position which the record indicated.

But if we accord to the assignee the character of a purchaser, and should extend the protection of the statute to him as such, yet there was a record of the first mortgage at the time of his purchase, and he certainly was not a subsequent purchaser without notice. His right must therefore stand upon his character as assignee of a chose in action.

The general rule is, that such an assignee, even if a *bona fide* taker, stands in the steps of his assignor. That the assignee of a mortgage takes the place of the mortgagee, and is chargeable with the notice which the mortgagee and assignor had of a preceding unregistered mortgage, was held by the court of chancery in the case of *Conover* v. *Van Mater, 3 C. E. Gr. 481.*

The decision was put upon the non-negotiable character of a chattel mortgage, which is a mere chose in action. Mr. Pomeroy asserts that so long as the distinction between negotiable and non-negotiable obligations is preserved in our jurisprudence, it must be considered as settled that the assignee takes subject to all equities.

In the recent case of *Decker* v. *Boice, 83 N. Y. 215,* decided

in the court of appeals in the state of New York, it was held that the assignee in good faith and for a valuable consideration, of a recorded chattel mortgage, got no preference over a prior unrecorded mortgage by reason of such record, when his assignee was precluded from claiming it by reason of notice of such equity.

I think, therefore, that if Hoagland occupied the position of a *bona fide* purchaser of the Thomas mortgage, yet as his assignor took it subjected to the prior lien of the mortgage to Shampanore, he is unable to assert a larger right.

The decree below should be affirmed.

*Decree unanimously affirmed.*